IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CURTIS E. MCALLISTER**, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 05-78-SLR |
| | : | |
| **THOMAS CARROLL**, | : | |
| Warden, and **M. JANE BRADY**, | : | |
| Attorney General of the State of | : | |
| Delaware, | : | |
| | : | |
| Respondents. | : | |

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

In March 1997, the petitioner, Curtis McAllister, was arrested and subsequently indicted on several drug and weapons charges following a search of the Wilmington home in which he resided. McAllister moved to suppress the contraband found during the search and statements he made to a probation officer. Following an evidentiary hearing and briefing by the parties, the motion was denied and the case proceeded to trial. A Delaware Superior Court jury found McAllister guilty of trafficking in heroin, possession with intent to deliver heroin, maintaining a dwelling for the use or consumption of narcotics, second degree conspiracy, and possession of drug paraphernalia. McAllister was sentenced as an habitual offender, pursuant to § 4214(b) of Title 11 of the Delaware Code, to life in prison without probation or parole. The Delaware Supreme Court, finding that in denying McAllister's motion to suppress the trial court had incorrectly placed the burden on McAllister to show that his Fourth Amendment rights had been violated, remanded the case for reconsideration of the suppression motion. *McAllister v. State*,

No. 222, 2000, order at 2 (Del. July, 31, 2001). After receiving the trial court's response to the order of remand, the Delaware Supreme Court affirmed McAllister's conviction and sentence. *McAllister v. State*, 807 A.2d 1119 (Del. 2002). In August 2003, McAllister applied *pro se* for state postconviction relief under Superior Court Criminal Rule 61. Superior Court denied his motion and McAllister appealed. The Delaware Supreme Court rejected McAllister's claims and granted the State's motion to affirm the judgment of the Superior Court. *McAllister v. State*, 2004 WL 3186197 (Del. Dec. 28, 2004).

Facts

As detailed by the Delaware Supreme Court, *McAllister*, 807 A.2d at 1121-22, the facts leading to McAllister's arrest and conviction are as follows:

> On March 14, 1997, the appellant, Curtis McAllister ("McAllister"), was arrested on drug charges following a search of the Wilmington home in which he resided. On that date, shortly after 9:00 a.m., Gregory Morehart ("Morehart"), a probation officer with the Delaware Department of Correction, received a telephone tip from a confidential informant that illegal drugs could be found in a padlocked bedroom at the residence shared by two probationers, Norma Johnson and Curtis McAllister. The informant had previously provided Morehart with similar information, but was not one of his probationers. At the time, both Johnson and McAllister were serving a term of probation for previous convictions of drug offenses.
>
> After receiving the tip, Morehart proceeded to a previously scheduled event and did not return to his office until midday. When he returned, Morehart called Johnson, whom he was assigned to supervise, and informed her that he wanted to make a home visit. Johnson told Morehart that she was about to leave, but would wait for Morehart to arrive. McAllister's assigned probation officer was not working that day. Before going to the Johnson residence, Morehart attempted to reach Thomas Scully, a higher ranking probation officer who also supervised McAllister's probation officer. Scully was out of the office, however, and could not be reached.
>
> Morehart was concerned that Johnson would not continue to wait for him, so he requested the assistance of three other probation officers to accompany him immediately to the Johnson residence. Morehart asked

Scully's secretary to continue to try to contact Scully, and informed her where he and the other officers were going. When they arrived at the Johnson residence, Johnson allowed the probation officers into the house. Morehart explained that he had received information that there were drugs in a padlocked room. Johnson acknowledged that one room was padlocked, but that McAllister occupied the room and she did not have a key. While the officers were speaking with Johnson, Morehart saw McAllister's car pull up outside. Morehart went out to meet McAllister and escorted him inside. Without administering a *Miranda* warning, Morehart questioned McAllister about the allegations made by the informant. McAllister admitted that he had a key to the padlocked room and that he sometimes slept there. When Morehart informed McAllister that he intended to search the room in order to determine the valididty of the allegation, McAllister became agitated and attempted to flee the residence. The probation officers restrained and handcuffed McAllister. The officers then conducted a search of McAllister's person and found a large bundle of cash in his pocket, as well as a set of keys. The Wilmington police were called to assist the probation officers.

At this point, one of the probation officers, Mark Herron, finally spoke with Scully, who had called the residence. After describing the circumstances leading up to that point in time, Scully authorized the probation officers to search McAllister's room. Using a key obtained from McAllister, Morehart and Herron entered the room and saw what appeared to be drugs lying on the bed. The probation officers left the room and informed the police of their discovery. McAllister and Johnson were taken into custody and, after obtaining a search warrant, the police confiscated the contraband from McAllister's room.

Discussion

In his petition for federal habeas relief, McAllister raises three grounds for relief: (1) his conviction was the result of evidence seized pursuant to an unconstitutional search and seizure; (2) his conviction was the result of statements elicited from him without having received *Miranda*[1] warnings; and (3) his due process rights were violated due to a *Brady*[2] violation. D.I. 1 at 5-6; D.I. 2. McAllister's claims, however, are unavailing.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

3

*Claim 1 – Illegal search and seizure*

In order to exhaust state remedies, McAllister must have presented to the state courts the legal and factual basis of the claims which he presents to the federal habeas court. *See* 28 U.S.C. § 2254(b); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Landano v. Rafferty*, 897 F.2d 661, 670-71 (3d Cir.), *cert. denied*, 498 U.S. 811 (1990); *Gibson v. Scheidemantel*, 805 F.2d 135, 139 (3d Cir. 1986). McAllister presented his claim of an unconstitutional search and seizure to the state supreme court on direct appeal, thus exhausting state remedies. *See Smith v. Digmon*, 434 U.S. 332, 333-34 (1978); *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984). McAllister's claim, however, does not provide a basis for relief.

Review of McAllister's search and seizure claim is precluded by *Stone v. Powell*, 428 U.S. 465 (1976). "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground the evidence in an unconstitutional search or seizure was introduced at trial." *Stone*, 428 U.S. at 494; *see also Deputy v. Taylor*, 19 F.3d 1485, 1491 (3d Cir. 1994); *accord Reed v. Farley*, 512 U.S. 339, 347 (1994); *Withrow v. Williams*, 507 U.S. 680, 686 (1993). Here, the state courts provided McAllister an adequate forum in which to present his Fourth Amendment claims. *See* Del. Super. Ct. Crim. R. 41 (providing that a defendant may file a pretrial motion to suppress evidence). McAllister filed a pretrial suppression motion, arguing that the applicable statute and regulations regarding searches of probationers and their residences failed to meet the constitutional standard announced in *Griffin v. Wisconsin*, 483 U.S. 868 (1987), and, in the alternative, that the regulations were not followed in this case. Following a May 1998 evidentiary hearing and additional briefing by the parties, the trial court denied McAllister's motion to suppress, finding that the Fourth Amendment's reasonableness requirement had been

4

satisfied. *See State v. McAllister*, 1999 WL 458992, *3 (Del. Super. Ct. April 23, 1999). On direct appeal to the state supreme court, McAllister raised the same claims. *See McAllister*, 807 A.2d at 1122-23. After remanding the case to the trial court to reevaluate the Fourth Amendment issue under the proper standard (i.e., placing the burden on the State to show that the search was reasonable), the trial court reconsidered the issue and confirmed its original decision. *See id*. at 1123. The state supreme court, finding that the probation officers had probable cause to believe that McAllister was in violation of his probation, held that the detention and subsequent search were proper. *Id*. at 1124-25. There is nothing in the record to suggest that the State limited McAllister's opportunity for full and fair litigation of any Fourth Amendment claims in the state courts. *See Word v. Carroll*, 2004 WL 1941342, *3 (D. Del. Aug. 31, 2004). Accordingly, under *Stone v. Powell*, McAllister's claim manifestly fails to provide a basis for federal habeas relief. *See Marshall v. Hendricks*, 307 F.3d 36, 81-82 (3d Cir. 2002); *Word*, 2004 WL 1941342 at *3.

Nevertheless, McAllister contends that he was not afforded a full and fair opportunity to litigate his Fourth Amendment claims in state court. As the basis for this contention, McAllister argues that the state courts did not apply the correct constitutional legal standards. Specifically, McAllister contends that the state courts improperly relied on *United States v. Knights*, 534 U.S. 112 (2001), and *Griffin v. Wisconsin*, 483 U.S. 868 (1987), to find that the search of McAllister and the use of the key to open the padlocked room were reasonable and did not contravene the Fourth Amendment.[3] *See McAllister*, 807 A.2d at 1125. McAllister, without explanation, simply asserts that the state court decision is contrary to clearly established United States Supreme Court precedent. Although McAllister contends that the state courts incorrectly

---

[3] Notably, McAllister relied on these same cases in support of his arguments in the state courts.

5

decided the issue, "an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar." *Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir. 1986) (citing cases); *see also Bradley v. Nagle*, 212 F.3d 559, 565 (11th Cir. 2000) (where state courts fully considered petitioner's claims, the federal court must deem state litigation to be full and fair "even were we to disagree with the state courts' analysis or conclusion"). As a result, McAllister's claim that the search of McAllister and the resulting seizure of the drug evidence is precluded from federal habeas review under *Stone v. Powell* and this claim should be dismissed.

*Claim 2 – Miranda violation*

McAllister presented his second claim, a violation of *Miranda*, to the state supreme court on direct appeal from his conviction, thus exhausting the claim. *See Digmon*, 434 U.S. at 333-34; *Swanger*, 750 F.2d at 295. Specifically, McAllister claims that the probation officer's failure to administer *Miranda* warnings before questioning him required suppression of his inculpatory statement admitting that the padlocked room his. McAllister contends that he was in custody when Morehart began asking him questions, thus triggering *Miranda* protections. McAllister's claim, however, does not provide a basis for relief.

Section 104 of Title I of the Antiterrorism and Effective Death Penalty Act of 1996, codified as 28 U.S.C. § 2254, restricts the scope of collateral review of convictions and sentences for persons in custody pursuant to the judgment of a state court. As amended, § 2254(d) states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceeding unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>  (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Hameen v. State of Delaware*, 212 F.3d 226, 235 (3d Cir. 2000); *Werts v. Vaughn*, 228 F.3d 178, 196-97 (3d Cir. 2000); *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 885 (3d Cir.) (*en banc*), *cert. denied*, 528 U.S. 824 (1999) (determining the standard of review governing petitions for a writ of habeas corpus under revised § 2254(d)).  Thus, under revised § 2254, a habeas petitioner is not entitled to relief unless he can establish that the decision of the state court was contrary to, or involved an objectively unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  *See Gattis v. Snyder*, 278 F.3d 222, 228 (3d Cir.), *cert. denied*, 537 U.S. 1049 (2002); *Matteo*, 171 F.3d at 885; *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 434 (D. Del. 1998).  Moreover, factual determinations by state trial and appellate courts are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding.  *See* §§ 2254(d)(2), (e)(1).  *See also Williams,* 529 U.S. at 402-13; *Affinito v. Hendricks*, 366 F.3d 252, 256-57 (3d Cir. 2004); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000), *cert. denied*, 531 U.S. 1084 (2001).

Under the terms of 28 U.S.C. § 2254(d),  this Court must determine whether the state court adjudication of McAllister's *Miranda* claim was an unreasonable application of clearly established federal law when it concluded that McAllister was not in custody.  As explained by the Third Circuit, a federal court's consideration under § 2254(d)(1) of a habeas petitioer's claim proceeds in two steps. The court "must first identify the applicable Supreme Court precedent and

determine whether it resolves the petitioner's claim." *Werts*, 228 F.3d at 197. To do so, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Id.*; *see Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) ("A federal court may not overrule a state court for simply holding a different view from its own, when the precedent from this Court is, at best, ambiguous."). Thus, if the Supreme Court has not established "a clear or consistent path" of jurisprudence for state courts to follow, the prisoner is not entitled to relief. *Lockyear v. Andrade*, 538 U.S. 63, 72 (2003). "Supreme Court jurisprudence addressing § 2254(d)(1) has established that determining the 'clearly established' benchmark should be done on a case-specific level." *Fischetti v. Johnson*, 384 F.3d 140, 148 (3d Cir. 2004). Under § 2254(d)(1), "the Court views its precedents in their particular factual settings. The touchstone precedents are not to be examined by looking to broad pronouncements or generative principles in the opinion." *Id.* (citing cases).

"If [the court] determine[s] that the state court decision is not 'contrary to' the applicable Supreme Court precedent, then [the court is] required to advance to the second step in the analysis – whether the state court decision was based on an 'unreasonable application of Supreme Court precedent.'" *Werts*, 228 F.3d at 197. In performing this inquiry, the court is "not authorized to grant habeas corpus relief simply because [it] disagree[s] with the state court's decision or because [it] would have reached a different result if left to [its] own devices." *Id.* Instead, the state court's application of Supreme Court precedent must have 'resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.* Moreover, "the range of reasonable judgment can depend in part on the nature of the relevant rule. . . . Applying a general standard to a specific case can demand a substantial element of

8

judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, (2004). In this case, the decision of the state courts is a reasonable application of the relevant constitutional standards.

After being taken into custody or a custodial setting, a person questioned by law enforcement officers must first "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 444. A suspect is entitled to *Miranda* warnings only if he or she is interrogated while "in custody." *Thompson v. Keohane*, 516 U.S. 99 (1995). In determining whether an individual was in custody, the court must examine the circumstances surrounding the "interrogation," but "the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (*per curiam*) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (*per curiam*)). Custody must be determined based on how a reasonable person in the suspect's situation would perceive his circumstances. *See Stansbury v. California*, 511 U.S. 318, 322 (1994) (*per curium*); *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). Against this backdrop, McAllister has not established that the state court's decision warrants relief under § 2254.

McAllister contends that because Morehart "escorted" him into the residence, McAllister was in custody for the purposes of *Miranda*. D.I. 2 at 16-17. McAllister asserts that he did not feel free to leave, and that therefore he was sufficiently detained to require warnings before being questioned. D.I. 2 at 17. The trial court, however, found that McAllister was not in custody

9

when confronted by Morehart and that McAllister's "protestations to the contrary are self-serving and lack credibility." *McAllister*, 1999 WL 458992 at *4. On appeal, the state supreme court also found that McAllister was not in custody. The court noted that "[a]t the time McAllister made the incriminating statement, he was in his own home, to which he had come freely, there were no police officers present, the probation officers were not armed or blocking his exit in any way, and the questioning was direct and brief." *McAllister*, 807 A.2d at 1126. The record supports the state court findings. Morehart testified at the suppression hearing that he saw McAllister pull up in his car and walk toward the house. Appendix to Appellant's Opening Brief in Delaware Supreme Court, No. 222, 2000 at A-43, A-61. Morehart went outside to meet McAllister where he asked the probationer to come inside because they had something to talk about. *Id*. McAllister walked into the house with Morehart. Once inside, Morehart asked McAllister who stayed in the padlocked bedroom, and Herron, another probation officer, asked who had the key. Appendix to Appellant's Opening Brief in Delaware Supreme Court, No. 222, 2000 at A-44. McAllister told the probation officers that he used to stay in that room and that he had the key. *Id*. McAllister testified at the suppression hearing that when he arrived at the house, he intended to enter the house before being asked to do so. Appendix to Appellant's Opening Brief in Delaware Supreme Court, No. 222, 2000 at A-74. No police officers were present when McAllister was asked these questions, and the questioning was very brief. McAllister was not restrained in any way until after he attempted to flee the residence. Given this particular set of facts, the state court was not unreasonable in deciding that McAllister was not in custody for purposes of *Miranda*. *See, e.g., Beckwith v. United States*, 425 U.S. 341, 347 (1976) (although suspect was "focus" of IRS investigation, questioning of suspect in his home did not amount to "custody" for purposes of *Miranda*); *United States v. Scott*, 590 F.2d 531, 533

(3d Cir. 1979) (parolee not in custody for *Miranda* purposes when questioned in his home by parole officers regarding a tip that parolee had an illegal weapon); *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004) (finding it relevant for custody determination that accused was "on his own turf") (citations omitted); *United States v. Parker*, 262 F.3d 415, 419 (4th Cir. 2001) (suspect questioned in her own home who was not told that she was not free to leave was not in custody). Thus, the state courts properly found that McAllister's "situation did not approximate formal arrest and was limited to the inquiries permitted between a probation officer and a person subject to supervision." *Id.*; *see also Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (refusing to extend the requirement of *Miranda* warnings to interviews with probation officers). McAllister has failed to demonstrate that the Delaware Supreme Court's decision was an unreasonable application of United States Supreme Court precedent, and this claim fails under § 2254(d)(1). *See Matteo*, 171 F.3d at 890.

Even if the Court found that McAllister should have been given *Miranda* warnings prior to being asked where he stayed and whether or not he had a key to the padlocked room, any such error would be harmless under the standard announced in *Brecht v. Abramson*, 507 U.S. 619 (1993). Under *Brecht,* a trial error is harmless if it "did not 'substantially influence' the jury's verdict." 507 U.S. at 632. *See Whitney v. Horn*, 280 F.3d 240, 257 (3d Cir. 2002). Norma Johnson had informed the probation officers that she did not have a key to open the padlocked room and that McAllister stayed with her in the other bedroom. Appendix to Appellant's Opening Brief in Delaware Supreme Court, No. 222, 2000 at A-98-99. Drugs were discovered in the bedroom shared by McAllister and Johnson, as well as the padlocked room. Appendix to Appellant's Opening Brief in Delaware Supreme Court, No. 222, 2000 at A-84-96. Because the probation officers had reasonable suspicion to search the entire house once they had confirmed

that there was a padlocked room as reported by the informant and McAllister became nervous when asked about the room, the drugs and paraphernalia would have been discovered regardless of McAllister's answers during his brief questioning by probation officers. Thus, McAllister's admissions, having already been revealed by Johnson, could not have had a "substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (citations omitted).

*Claim 3 – Brady violation*

In his third claim, McAllister complains that he was denied his due process right to a fair trial because the prosecution withheld material exculpatory evidence in violation of the holding in *Brady v. Maryland*, 373 U.S. 83 (1963). McAllister presented this claim to the state supreme court on appeal from the denial of his state postconviction motion, thereby exhausting his remedies as to that claim. *See Digmon*, 434 U.S. at 333-34; *Swanger*, 750 F.2d at 295. Nevertheless, under revised § 2254, a habeas petitioner is not entitled to relief unless he can establish that the decision of the state court was contrary to, or involved an objectively unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See Gattis*, 278 F.3d at 228; *Matteo*, 171 F.3d at 885; *Lawrie*, 9 F. Supp. 2d at 434. In this case, the decision of the state courts is a reasonable application of the relevant constitutional standards.

Where a conviction is challenged on the basis of the state's failure to disclose evidence, the appropriate federal precedent to apply is *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. *Jackson v. Carroll*, 2004 WL 1192650, *16 (D.Del. 2004). To establish a *Brady* claim, a habeas petitioner must demonstrate that: (1) the prosecution suppressed evidence, either willfully or inadvertently; (2) the evidence was favorable to the petitioner because it was

exculpatory or of impeachment value; and (3) the evidence was material. *See Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004) (citing *Banks v. Dretke*, 540 U.S. 668 (2004) and *United States v. Perdomo*, 929 F.2d 967, 970 (3d Cir. 1991)). To determine if the withheld exculpatory evidence was material, the inquiry is whether the "evidence could reasonably be taken to put the case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). In this case, the information was neither exculpatory nor material.

McAllister complains that the prosecution failed to disclose that certain items discovered in McAllister's room had been dusted for fingerprints. He further alleges that fingerprints belonging to Norma Johnson and a man by the name of Robert Sanders were discovered on some of the items seized by police. D.I. 2 at 18. The record reveals that defense counsel, upon viewing items of evidence during the trial, noticed fingerprint powder on some of the items seized from the bedroom. Appendix to Appellant's Opening Brief in Delaware Supreme Court No. 345, 2004 at A-1-4. The prosecutor had been unaware that the police had dusted for fingerprints and informed the court that there were no fingerprint results with regard to any of the items tested. *Id*. Defense counsel asked for, and received, a jury instruction explaining that defense counsel had relied on information provided by the prosecution when he made his opening remarks that no attempt had been made to make fingerprint comparisons. State's Motion to Affirm in Delaware Supreme Court No. 345, 2004 at B1. There is nothing in the record to support McAllister's contention that fingerprint comparisons were made or that another suspect was identified. McAllister does not specify which items of evidence he alleges had other people's fingerprints on them. McAllister simply asserts that evidence of other people's fingerprints on some of the seized items exculpates him because "someone else's fingerprints

being found at trial would clearly indicate that the drugs belonged to that person whose fi[n]gerprints they were." D.I. 2 at 20. Contrary to his assertions, the discovery of other people's fingerprints (if they were in fact discovered) on the unspecified evidence does not prove that McAllister did not handle the evidence. McAllister has failed to show any record support for his contentions. Moreover, even if true, the fact that other people touched McAllister's belongings does not undermine confidence in the verdict, McAllister having admitted that the padlocked room in which the evidence was discovered was where he sometimes slept and that he had the key. The state courts, finding no basis in the record to support McAllister's claim, properly dismissed the claim. This decision by the state courts was certainly a reasonable application of the United States Supreme Court's decisions in *Brady* and its progeny, and this claim should be dismissed under § 2254(d)(1).

To the extent that McAllister is also complaining that he did not receive a postconviction evidentiary hearing regarding his *Brady* claim, that claim does not provide an independent basis for federal habeas relief. It is well-settled law that allegations of error in state postconviction relief proceedings cannot serve as the basis for federal habeas relief. *See Lambert v. Blackwell*, 387 F.3d 2103 (3d Cir. 2004); *Brokenbrough v. Snyder*, 890 F. Supp. 342, 344 (D. Del. 1995); *Ross v. Carroll*, 2003 WL 1906304 (D. Del. 2003); *Cropper v. Carroll*, 2002 WL 32332374 (D. Del. 2002). Accordingly, McAllister's complaint that he did not receive a state postconviction evidentiary hearing is collateral to his conviction and sentence, and thus is not cognizable in a § 2254 petition.

## Conclusion

Based upon the Superior Court docket sheet, it appears that McAllister's May 6, 1998, suppression hearing transcript and transcripts of the June 2000 jury trial have been prepared. In

the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court.

For the foregoing reasons, the petition for a writ of habeas corpus should be dismissed without further proceedings.

/s/ Elizabeth R. McFarlan
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 3759
elizabeth.mcfarlan@state.de.us

Date: July 11, 2005