IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CURTIS E. MCALLISTER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. No. 05-078-SLR |
| | ) | |
| THOMAS CARROLL, Warden, and CARL C. DANBERG, Attorney General of the State of Delaware, | ) ) ) ) ) | |
| | ) | |
| Respondents. | ) | |

---

Curtis E. McAllister.  Pro se petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for respondents.

---

**MEMORANDUM OPINION**

Dated: March 9, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

Petitioner Curtis E. McAllister ("petitioner") is an inmate in custody at the Delaware Correctional Institution in Smyrna, Delaware. Before the court is petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 1) The State has filed its answer that habeas relief is not warranted. For the reasons that follow, petitioner's application will be denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The facts of petitioner's case, as adduced at trial and reported by the Delaware Supreme Court on direct appeal, are as follows:

> On March 14, 1997, [petitioner] was arrested on drug charges following a search of the Wilmington home in which he resided. On that date, shortly after 9:00 a.m., Gregory Morehart ("Morehart"), a probation officer with the Delaware Department of Correction, received a telephone tip from a confidential informant that illegal drugs could be found in a padlocked bedroom at the residence shared by two probationers, Norma Johnson and [petitioner]. The informant had previously provided Morehart with similar information, but was not one of his probationers. At the time, both Johnson and [petitioner] were serving a term of probation for previous convictions of drug offenses.
>
> After receiving the tip, Morehart proceeded to a previously scheduled event and did not return to his office until midday. When he returned, Morehart called Johnson, whom he was assigned to supervise, and informed her that he wanted to make a home visit. Johnson told Morehart that she was about to leave, but would wait for Morehart to arrive. Petitioner's assigned probation officer was not working that day. Before going to the Johnson residence, Morehart attempted to reach Thomas Scully, a higher ranking probation

1

> officer who also supervised petitioner's probation officer. Scully was out of the office, however, and could not be reached.
>
> Morehart was concerned that Johnson would not continue to wait for him, so he requested the assistance of three other probation officers to accompany him immediately to the Johnson residence. Morehart asked Scully's secretary to try to contact Scully, and informed her where he and the other officers were going. When they arrived at the Johnson residence, Johnson allowed the probation officers into the house. Morehart explained that he had received information that there were drugs in a padlocked room. Johnson acknowledged that one room was padlocked, but that [petitioner] occupied the room and she did not have a key. While the officers were speaking with Johnson, Morehart saw [petitioner's] car pull up outside. Morehart went out to meet [petitioner] and escorted him inside. [Petitioner] admitted that he had a key to the padlocked room and that he sometimes slept there. When Morehart informed [petitioner] that he intended to search the room in order to determine the validity of the allegation, [petitioner] became agitated and attempted to flee the residence. The probation officers restrained and handcuffed [petitioner]. The officers then conducted a search of [petitioner's] person and found a large bundle of cash in his pocket, as well as a set of keys. The Wilmington police were called to assist the probation officers.
>
> At this point, one of the probation officers, Mark Herron, finally spoke with Scully, who had called the residence. After describing the circumstances leading up to that point in time, Scully authorized the probation officers to search [petitioner's] room. Using a key obtained from [petitioner], Morehart and Herron entered the room and saw what appeared to be drugs lying on the bed. The probation officers left the room and informed the police of their discovery. [Petitioner] and Johnson were taken into custody and, after obtaining a search warrant, the police confiscated the contraband from [petitioner's] room.

McAllister v. State, 807 A.2d 1119, 1121-22(Del. 2002).

Petitioner was arrested and subsequently indicted on several drug and weapons charges. Prior to trial, petitioner moved to suppress the contraband found during the search of his room and

statements he made to the probation officers. The Superior Court conducted an evidentiary hearing, and denied the motion. The case proceeded to trial, and a Delaware Superior Court jury found petitioner guilty of trafficking in heroin, possession with intent to deliver heroin, maintaining a dwelling for the use or consumption of narcotics, second degree conspiracy, and possession of drug paraphernalia. Petitioner was sentenced as an habitual offender to life in prison without probation or parole.

Petitioner appealed, arguing that: (1) the Superior Court erred in denying his suppression motion for the evidence obtained from his person and the padlocked room; (2) the probation officers' failure to administer Miranda warnings before questioning him required the suppression of his admission that the padlocked room was his; and (3) the Superior Court erred in admitting Norma Johnson's statement to the probation officer that the padlocked room was petitioner's. McAllister v. State, 807 A.2d 1119 (Del. 2002). After the initial briefing was concluded, the Delaware Supreme Court found that the Superior Court had incorrectly placed the burden on petitioner in deciding his motion to suppress, and remanded the case to the Superior Court for reconsideration of the suppression motion under the appropriate burden of proof. Id. at 1123. On remand, the Superior Court confirmed its original decision to deny petitioner's suppression motion. The Delaware Supreme Court

affirmed petitioner's conviction and sentence. Id.

In August 2003, petitioner filed a motion in the Superior Court for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). Petitioner's Rule 61 motion alleged that: (1) the State withheld exculpatory evidence from defense counsel regarding the fact that fingerprints of another person were found on evidence obtained from the padlocked room; (2) the warrantless search of petitioner's room and subsequent seizure of evidence violated petitioner's Fourth Amendment rights; and (3) the prosecution made improper comments during closing arguments about the weight of the evidence and the credibility of witnesses. (D.I. 14, State v. McAllister, Cr. A. No. IN97-03-1772, 1775, 1776 &1779R3, Letter Order (Del. Super. Ct. July 28, 2004)). The Superior Court denied the Rule 61 motion, and the Delaware Supreme Court affirmed that decision. McAllister v. State, 2004 WL 3186197 (Del. Dec. 28, 2004).

### III.  GOVERNING LEGAL PRINCIPLES

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Absent exceptional circumstances, a federal court cannot review a habeas petition unless the petitioner has exhausted all means of available relief

for his claims under state law. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842-44 (1999); Picard v. Connor, 404 U.S. 270, 275 (1971). A petitioner satisfies the exhaustion requirement by invoking "one complete round of the State's established appellate review process," which involves fairly presenting the claim to the state's highest court, either on direct appeal or in a post-conviction proceeding. O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999); See Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).

If the state's highest court adjudicated a federal habeas claim on the merits, then a federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A state court has adjudicated a claim on the merits for the purposes of § 2254(d) if the state court "decision finally resolv[es] the parties' claims, with res judicata effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), rev'd on other grounds by Rompilla v. Beard, 125 S.Ct. 2456 (2005). Pursuant to § 2254(d), federal habeas relief may only be granted when the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the

5

facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); Williams v. Taylor, 529 U.S. 362, 412 (2000); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

AEDPA also requires a federal court to presume that a state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). A petitioner can only rebut this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000).

## IV. DISCUSSION

Petitioner's § 2254 application asserts three claims for habeas relief: (1) the warrantless search of his room and person violated the Fourth Amendment; (2) petitioner's post-arrest statements should have been suppressed on the ground that they were elicited from him in violation of his Miranda rights; and (3) petitioner was denied his due process right to a fair trial because the prosecution withheld exculpatory material in violation of Brady v. Maryland, 373 U.S. 83 (1963). (D.I. 1)

The State's answer contends that the application should be

6

dismissed in its entirety. (D.I. 12)

### A. Fourth Amendment claim

In his first claim, petitioner contends that the probation officers' warrantless search of his room and person violated the Fourth Amendment.[1] Petitioner exhausted state remedies for the Fourth Amendment claim by presenting it to the Delaware Supreme Court on direct appeal. Nevertheless, pursuant to Stone v. Powell, 428 U.S. 465 (1976), the claim fails to state a proper ground for habeas relief.

In Stone, the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone, 428 U.S. at 494; see also Wright v. West, 505 U.S. 277, 293 (1992)("We have also held . . .

---

[1] To the extent petitioner argues that the probation officers failed to comply with departmental regulations in searching his person and room, he alleges a state law issue that is not cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 67-8 (1991); Smith v. Phillips, 455 U.S. 209, 211 (1982); Mullaney v. Wilbur, 421 U.S. 684, 691 (1975); Johnson v. Rosemeyer, 117 F.3d 104, 109 (3d Cir. 1997)("it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim"). Petitioner also contends that the Delaware statute authorizing probation officers to conduct warrantless searches violates the Fourth Amendment. However, the court views this issue to be an extension of his claim that the search itself violated the Fourth Amendment and, therefore, does not treat it as an independent claim.

7

that claims under Mapp [evidence obtained in violation of the Fourth Amendment] are not cognizable on habeas as long as the courts have provided a full and fair opportunity to litigate them at trial or on direct review.")  A petitioner has had a full and fair opportunity to litigate his Fourth Amendment claim if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure.  See U.S. ex rel. Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978); Petillo v. New Jersey, 562 F.2d 903, 906-07 (3d Cir. 1977).  Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim if a structural defect in the state system prevented his claim from being heard. Marshall v. Hendricks, 307 F.3d 36, 82 (3d Cir. 2002).

In the instant situation, petitioner filed a pre-trial motion in the Delaware Superior Court to suppress the contraband seized from his person by the probation officers and from his room by the police.  The Superior Court held an evidentiary hearing and denied the motion.  On direct appeal, the Delaware Supreme Court remanded the case to the Superior Court to reevaluate its denial of the suppression motion under the proper standard.  After applying the proper standard, the Superior Court confirmed its original decision to deny the suppression motion, and the Delaware Supreme Court ultimately affirmed that decision. Therefore, petitioner had a full and fair opportunity to litigate

his Fourth Amendment claim in the state courts.

Nevertheless, petitioner argues that he was not afforded a full and fair opportunity to litigate his Fourth Amendment claim in the state courts because the courts incorrectly applied the principles articulated in Griffin v. Wisconsin, 483 U.S. 868 (1987) in denying his suppression motion. (D.I. 16) Whether or not a state court incorrectly decided a petitioner's Fourth Amendment claim is immaterial to the full and fair opportunity analysis. Marshall, 307 F.3d at 82; Gilmore v. Marks, 799 F.2d 51, 56 (3d Cir. 1986), cert. denied, 479 U.S. 1041 (1987). Accordingly, petitioner's argument fails to overcome the Stone bar, and the court will deny petitioner's Fourth Amendment claim.

### B. Miranda violation

Both parties assert that the probation officers did not administer Miranda warnings before questioning petitioner about the padlocked room. Petitioner contends that his admission that he sometimes slept in the room and that he had a key to the room was obtained in violation of Miranda. The Delaware Supreme Court denied this claim as meritless on direct appeal. Therefore, the court must review the claim under § 2254(d)(1) and determine if the Delaware Supreme Court's decision was contrary to, or an unreasonable application of, Supreme Court precedent.

It is well-settled that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from

9

custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444 (1966). Pursuant to Miranda, law enforcement officers must warn a person in custody prior to questioning that he has a right to remain silent, that anything he says may be used against him as evidence, and that he has a right to counsel. Id. A court must engage in a two-step inquiry to determine whether a person was in custody for Miranda purposes:

> [F]irst, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt that he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.

Thompson v. Keohane, 516 U.S. 99, 112 (1995). Three factors should be weighed when performing the second step of the custody inquiry: (1) the location of the questioning; (2) the information known by the officer concerning the suspect's culpability; and (3) whether the officer revealed his belief that the suspect was guilty. U.S. v. Jacobs, 431 F.3d 99, 105 (3d Cir. 2005).

On direct appeal, petitioner argued that he was in custody for Miranda purposes because the probation officer physically escorted him from the car to the house, indicating that he did not move on his own free will. However, the Delaware Supreme

Court viewed the totality of the circumstances, and determined that petitioner was not in custody for <u>Miranda</u> purposes when he made the inculpatory statement because the circumstances did not approximate a formal arrest. In reaching that conclusion, the State Supreme Court noted the following facts: (1) petitioner went to the house freely; (2) petitioner was in his home when he made the inculpatory statement; (3) no police officers were present in the house during the questioning; (4) the probation officers were not armed; (5) the probation officers were not blocking petitioner's exit from the home; (6) the questioning was direct and brief; and (7) the questioning was limited to the inquiries permitted between a probation officer and person subject to supervision.

The court has reviewed the record and concludes that the Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of, Supreme Court precedent. Although the Delaware Supreme Court did not explicitly discuss petitioner's argument that the probation officer's act of physically escorting him into the house constituted custody for <u>Miranda</u> purposes, the Delaware Supreme Court did determine that petitioner entered the house freely. That conclusion was a reasonable determination of facts in light of the evidence presented at the pre-trial suppression hearing. During the hearing, petitioner testified that the probation officer "grabbed

11

me by the arm and . . . kind of ushered me into the house like I was under arrest or something." (D.I. 14, McAllister v. State, No.222,2000, App. to Appellant's Op. Br., at A-77.) Yet, petitioner also testified that he had intended to enter the house even before the probation officer asked him to do so. Additionally, one of probation officers testified that "[petitioner] got out of the car and I said, well, he's here, so I'll go outside and bring him in. And I walked out and greeted him and he walked into the house with me." Id. at A-43.

Absent clear and convincing evidence to the contrary, a federal court must defer to a state court's factual determinations, including those involving credibility issues. 28 U.S.C. 2254(e)(1); Miller v. Fenton, 474 U.S. 104, 114 (1985). The judge presiding over the suppression hearing found the testimony of the probation officer to be more credible than that of petitioner. (D.I. 14, McAllister v. State, No.222,2000, App. to Appellant's Op. Br., at at A-12, A-13.) In the instant situation, petitioner has not presented any clear and convincing evidence to rebut the Superior Court's determination that the probation officer's testimony was more credible than his. Viewing that factual determination in addition to the factors explicitly analyzed by the Delaware Supreme Court, the court concludes that the Delaware Supreme Court's rejection of petitioner's Miranda claim was neither contrary to, nor an

unreasonable application of, Supreme Court precedent. Accordingly, the court will deny the Miranda claim for failing to satisfy § 2254(d)(1).

### C. Brady claim

During petitioner's trial, defense counsel noticed that some of the items seized from petitioner's bedroom contained fingerprint dust. When questioned with respect to this finding, the prosecutor stated that he did not know that police had dusted for fingerprints. The prosecutor also informed the court that there were no fingerprint results for the items tested. Defense counsel then requested, and received, a jury instruction explaining that defense counsel's opening statement had been formulated on the basis of the prosecution's assurance that no attempt had been made to make fingerprint comparisons.

However, according to petitioner, counsel informed him subsequent to trial that the fingerprints of two other probationers were recovered from the evidence by police. Petitioner's final habeas claim is premised on that belief, and he contends that the prosecution withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963). Petitioner exhausted state remedies for this claim by presenting it to the Delaware Supreme Court on post-conviction appeal, and the Delaware Supreme Court denied the claim on the merits. Therefore, the court can only grant habeas relief if the Delaware

13

Supreme Court's decision was contrary to, or an unreasonable application of, well-established Supreme Court precedent.

In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. The Brady rule applies to favorable and material evidence affecting the jury's judgment of a crucial prosecution witness' credibility. Giglio v. United States, 405 U.S. 150, 154 (1972). To establish a Brady violation, a petitioner must demonstrate that: (1) the prosecution either willfully or inadvertently suppressed evidence; (2) the evidence was favorable to the petitioner because it was exculpatory or had impeachment value; and (3) the evidence was material. See Lambert v. Blackwell, 387 F.3d 210, 252 (3d Cir. 2004)(citing Banks v. Dretke, 540 U.S. 668 (2004) and United States v. Perdomo, 929 F.2d 967, 970 (3d Cir. 1991). Exculpatory evidence is material if the "evidence could reasonably be taken to put the case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 435 (1995).

The Superior Court denied the instant claim presented by petitioner in his Rule 61 motion as meritless after determining that no fingerprint comparisons had been made and, therefore, no

14

other suspect was identified.  Petitioner has not presented any clear and convincing evidence that such fingerprint evidence actually existed.  Additionally, the record does not indicate that such evidence ever existed.  Therefore, in these circumstances, the court concludes that the state courts' denial of petitioner's Brady claim does not warrant relief under § 2254(d)(1).

## V.   CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty.  See Third Circuit Local Appellate Rule 22.2.  A certificate of appealability may only be issued when a petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

For the reasons stated above, the court concludes that petitioner is not entitled to federal habeas relief.  Reasonable jurists would not find these conclusions unreasonable.  Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

**VI. CONCLUSION**

For the foregoing reasons, petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254 will be denied. An appropriate order will be entered.